## LAW, Co. Atty., v. SMITH.

No. 1941. Decided November 9, 1908 (98 Pac. 300).

1. STATUTES—CONSTRUCTION—MEANING OF WORDS. The court in construing a statute must give to every word or phrase its ordinary meaning, unless the context shows that to do so will defeat the legislative intent.

2. APPEAL AND ERROR—QUESTIONS OF FACT—DIRECTING VERDICT—REVIEW. To review the action of the trial court in directing or refusing to direct a verdict, the court on appeal, must look into the evidence, and, where the evidence is without conflict and no conflicting inferences are permissible, or where all the evidence with the inferences lacks an essential element of the case or defense, the question what the verdict should be is one of law, but the court will not weigh the evidence to determine whether certain facts are established.

3. TRIAL—MOTION FOR DIRECTED VERDICT—REVIEW OF EVIDENCE. The court in passing on the request for a directed verdict must pass on the question whether the evidence justifies its submission to the jury for a finding either for or against plaintiff or defendant, and in doing so the court simply decides what

the judgment shall be on the undisputed facts, but it does not weigh the evidence to determine what facts are established.

4. APPEAL AND ERROR—RULING ON REQUEST FOR DIRECTED VERDICT—REVIEW. The error of the trial court in directing or refusing to direct a verdict is one of law reviewable by the Supreme Court on appeal as coming within "orders, rulings, or decisions" made in the action within Comp. Laws 1907, section 3304, authorizing the court on appeal from a judgment to review orders, rulings, and decisions in the action.

5. NEW TRIAL—MOTIONS—RIGHT TO MOVE FOR NEW TRIAL. The right to move for a new trial exists in every case, legal or equitable, and whether tried by the court or jury.

6. APPEAL AND ERROR—REVIEW—MOTION FOR NEW TRIAL—NECESSITY. A party who has obtained one ruling from the trial court and has taken or has been given a statutory exception need not, to obtain a review of the ruling, require the trial court to pass on a motion for new trial.

7. APPEAL AND ERROR—REVIEW—MOTION FOR NEW TRIAL—NECESSITY. Where a party has not taken, and the statute has not given him, an exception to a ruling before moving for new trial, he cannot obtain a review of the ruling by simply filing a motion for new trial and excepting to an adverse ruling thereon.

8. NEW TRIAL—DISCRETION OF TRIAL COURT. The trial court in passing on a motion for a new trial may exercise a sound discretion which the losing party may invoke in the light of the whole proceedings in the case.

9. APPEAL AND ERROR—RULING ON MOTION FOR NEW TRIAL—REVIEW. The Supreme Court in reviewing a ruling on a motion for new trial is ordinarily limited to the review of the specific rulings made by the trial court.

10. APPEAL AND ERROR—MOTION FOR NEW TRIAL—NECESSITY. Where matter comes up after the trial or relates to matters within Comp. Laws 1907, section 3292, authorizing a new trial for irregularity in the proceedings of the court or jury, misconduct of the jury or adverse party, accident and surprise, newly discovered evidence, excessive damages, a motion for new trial involving such matters must be made, or the same cannot be reviewed.

11. APPEAL AND ERROR—MOTION FOR NEW TRIAL—NECESSITY. Under Comp. Laws, 1907, section 3292, authorizing the granting of a new trial for insufficiency of the evidence to justify the verdict, a party challenging the sufficiency of the evidence must do so by motion for new trial, unless during the trial, he raised the question by motion for nonsuit or for a directed verdict, in which case a motion for new trial is not necessary to obtain a review on appeal.

12. APPEAL AND ERROR—REVIEW—NEW TRIAL—NECESSITY. Under Comp. Laws 1907, section 3292, authorizing the granting of a new trial on specified grounds, and section 3298, authorizing the court to grant a new trial on its own motion, and section 3304, providing that, on appeal from a judgment, orders, rulings, and decisions to which objections have been taken or which are deemed excepted to are before the court for review, etc., the review in the Supreme Court of errors at the trial does not depend on a motion for a new trial except for matters on which the trial court had no opportunity to pass during the trial, and orders, rulings, and decisions made by the trial court, including its ruling on motion to direct a verdict, and all questions of fact in equity cases on which the trial court passed, including the findings, and errors in findings of fact and conclusions of law in law cases, are before the Supreme Court for review without a motion for new trial.

13. COURTS—PREVIOUS DECISIONS AS BINDING. Where the Supreme Court has made a palpable error in construing a statute, the court should correct the error when the correction will not inflict serious injury to any one, and will enforce the legislative intent.

14. OFFICERS—CLAIMS—IMPROPER CLAIMS—STATUTES. A sheriff presenting to the county a claim for money expended in the discharge of official duties for which the law provides no compensation except the salary fixed by Comp. Laws, 1907, section 2057, does not present a charge for illegal fees for services rendered within section 4580, providing that any officer guilty of corruptly charging and collecting illegal fees for services rendered may be removed.

15. FALSE PRETENSES—ILLEGAL CLAIMS—STATUTES—CONSTRUCTION—"GENUINE." Comp. Laws 1907, section 4083, punishing every person who with intent to defraud presents for allowance to any state or county officer, etc., authorized to allow or pay the same, if genuine, any fraudulent claim, is violated where the claim presented is one which on its face purports to be a charge against the political division for which the officer acts in allowing or paying it, and the mere fact that the claim is unauthorized by law, and that the officer cannot legally allow or pay it, is not decisive; and so long as the claim, if valid, is one that could or should be allowed or paid, it is within the statute, though the claim itself may be for a matter which the law does not authorize or even forbid, the word "genuine" referring to a real claim as distinguished from a counterfeit.

16. OFFICERS—SHERIFFS—ILLEGAL FEES. An accusation filed against a sheriff in proceedings for his removal under Comp. Laws 1907, section 4565, subjecting officers to removal for high crimes, misdemeanors, or malfeasance, which avers that he is accused

of malfeasance committed by his fraudulently presenting for allowance and payment a false claim against the county for expenses in performing certain duties after he had presented a claim therefor to the state which claim had been allowed and paid, states facts authorizing a conviction for a violation of section 4083, punishing every person, who with intent to defraud, presents for allowance or payment a fraudulent claim.

17. OFFICERS—SHERIFF—PRESENTATION OF UNLAWFUL CLAIMS—"MALFEASANCE." While to convict an officer of the felony denounced by Comp. Laws 1907, section 4083, punishing every person who with intent to defraud, presents for allowance and payment a fraudulent claim, the proof must show that he presented the claim with intent to defraud, yet such proof is not essential to sustain a conviction for malfeasance in a proceeding for his removal under section 4565; the term "malfeasance" meaning the commission of an act which is positively unlawful.[1]

18. OFFICERS—REMOVAL—GROUNDS—STATUTES. Under Comp. Laws 1907, section 4056, providing that the omission to specify in the Code any ground of forfeiture of a public office shall not affect such forfeiture, etc., and section 4066, providing that a conviction of a felony involving misconduct in office forfeits the office, and section 4565, subjecting officers to removal for high crimes, misdemeanors, or malfeasance, an officer found guilty of the felony denounced by section 4083, punishing the presentation for allowance and payment of fraudulent claims, is removed from office without any further action, but proof that a county officer preferred a fraudulent claim against the county, and received payment therefor, with knowledge that he had no right to the money, shows his guilt of malfeasance justifying his removal, since, in view of section 4056, it is not necessary that the specific acts for which a removal is demanded are specified in some section of the Code, but it is enough that the particular acts relied on are specified in the accusation filed, and that such acts amount to malfeasance.

19. OFFICERS—REMOVAL—GROUNDS—STATUTES. To justify the removal of an officer for malfeasance under Code 1907, section 4565, subjecting officers to removal for high crimes, misdemeanors, or malfeasance, it is necessary that the act of which the officers is accused is positively unlawful or involves some evil or wrongdoing on his part, which must be known to him to be such when he committed the act, but it is not necessary that he should be found guilty of some high crime or misdemeanor.

[1] Skeen v. Craig, 31 Utah 20, 86 Pac. 487; Skeen v. Chambers, 31 Utah 36, 86 Pac. 492.

20. EVIDENCE—PRESUMPTIONS—KNOWLEDGE OF THE LAW. The law presumes that a sheriff knows the law, and, when he prefers a claim against the county, that he knows whether the law authorizes the claim or not.

21. OFFICERS—REMOVAL—GROUNDS—MALFEASANCE. Before an officer may be removed from office for malfeasance in presenting a fraudulent claim and receiving payment therefor, it must be found that he knew, when he preferred the claim or received payment, that he was not entitled to the money; and the mere fact of the filing of an unauthorized claim and receiving payment thereon may or may not constitute a wrongful act as distinguished from one not sanctioned by law.

22. OFFICERS—REMOVAL—GROUNDS—MALFEASANCE. As a general rule, it cannot be said as a matter of law that a particular act is wrongful and is malfeasance in office simply because it is not authorized by law.

23. OFFICERS—REMOVAL—GROUNDS—MALFEASANCE—EVIDENCE. In a proceeding under Comp. Laws 1907, section 4565, for the removal of a sheriff for malfeasance in presenting a fraudulent claim against the county and receiving payment thereon, in violation of section 4083, evidence *held* to require submission to the jury of the issue whether he preferred the claim knowing that he had no legal right to payment.

24. JURY—RIGHT TO JURY TRIAL—REMOVAL FROM OFFICE—DIRECTION OF VERDICT. Under Comp. Laws 1907, sections 4574, 4575, providing that, where an officer in proceedings for his removal denies the accusation, the court must proceed to try the accusation and the trial must be by jury, an officer in proceedings for his removal for malfeasance who does not waive a jury trial and who denies the charge is entitled to a jury trial, and the court cannot direct a verdict against him.

25. OFFICERS—REMOVAL—PROCEEDINGS—AUTHORITY OF COURT. The court, in proceedings for the removal of an officer for malfeasance, may set aside the verdict and grant a new trial for errors of law in the instructions, or for the refusal of the jury to follow the instructions.

26. OFFICERS—REMOVAL—GROUNDS—STATUTES. Under Comp. Laws 1907, sections 1015, 1016, 1023, 1027, requiring county officers to keep a correct account of fees collected by them and pay the same into the proper treasury, requiring fees generally to be paid in advance, requiring all officers to keep a fee book in which a detailed statement of fees collected shall be entered and providing that any officer willfully neglecting to keep a fee book, etc., shall be guilty of a misdemeanor, an officer is guilty of a misdemeanor only where he willfully refuses to keep

a fee book, and is not guilty in case of a mere mistake or inadvertence in failing to charge or collect fees, though his bond may be responsible for such omissions, and such omissions do not justify his removal from office for malfeasance.

27. Officers—Removal—Grounds—Statutes. Whether the failure of an officer to charge legal fees or include them in a statement filed by him as required by Comp. Laws 1907, sections 1015, 1016, 1023, 1027, is willful or otherwise, is a question of fact which under proper instructions must ordinarily be submitted to the jury in proceedings for the removal of the officer for a willful disregard of the statutes.

28. Officers—Removal—Malfeasance—Evidence—Sufficiency. In view of Comp. Laws 1907, section 1016, providing that all fees shall be paid in advance, the court may presume that an officer bound to collect fees in advance has complied with the law, so that, when he makes a return on a process showing a charge for fees, it will be presumed that he has collected the fees and has them, unless it appears that the case was a charity case in which no fees were to be collected, but such presumption does not warrant a finding that he willfully neglected to include them in the statement required by law on it appearing that they are not included therein.

29. Officers—Removal—Grounds. In a proceeding under Comp. Laws, 1907, section 4565, for the removal of a sheriff for his failure to file statements of fees collected by him, and for failing to charge and collect fees as required by sections 1015, 1016, and 1023, evidence held to require the submission to the jury of the issue whether he was guilty of a willful neglect essential to justify his removal.

Appeal from District Court, First District; J. A. Howell, Judge.

Action by Albert A. Law, as county attorney of Cache county, against Thomas H. Smith. From a judgment for defendant, plaintiff appeals.

Reversed and new trial ordered.

*Albert A. Law,* County Atty., and *George Halverson,* Dist. Atty., for appellant.

*Nebeker, Hart & Nebeker* for respondent.

FRICK, J.

On April 25, 1907, appellant, as the county attorney of Cache county, Utah, filed an accusation in writing against respondent, the duly elected, qualified, and acting sheriff of said county, to remove him from said office. The proceedings were commenced and conducted under the provisions of the following sections of the Compiled Laws of Utah, 1907. Section 4565 provides:

"All officers not liable to impeachment shall be subject to removal for high crimes, misdemeanors, or malfeasance in office, as in this chapter provided."

Section 4566 is as follows:

"An accusation in writing against any district, county, precinct, municipal, or school district officer, or officer of any board of education, for any high crime, misdemeanor, or malfeasance in office, may be presented by the grand jury or, by the county attorney in which the officer accused is elected or appointed."

Section 4567 provides: "The accusation must state the offense charged in ordinary and concise language." Section 4568 provides how the accusation shall be served upon the accused, and fixes the time in which he must make answer thereto. The accused may, however, deny the charge orally. Section 4574 provides that, if the accused enters a plea of guilty, the court must render a judgment of conviction against him, and, if he denies the charges, the court must proceed to the trial of the accusation. Section 4575 is as follows:

"The trial must be by jury, and shall be conducted in all respects in the same manner as the trial of an indictment or information for a felony."

If the accused is convicted, section 4577 provides that the court must enter judgment of removal from office; and section 4578 provides for an appeal by the accused in case of conviction and judgment of removal, and that the appeal shall be taken and conducted as appeals in civil cases. The accusation was filed and the proceedings and trial were conducted substantially as provided in the foregoing

sections. After the evidence had all been submitted and the parties had rested, the appellant moved the court to direct the jury to find the respondent guilty upon two paragraphs, and the respondent asked that the court direct the jury to find him not guilty upon all the paragraphs of the accusation. The court denied appellant's motion, and directed the jury to return a verdict of not guilty upon all the charges, which the jury did, and the court entered judgment discharging the respondent, from which this appeal is prosecuted.

The appellant excepted both to the refusal of the court to direct a verdict against respondent and to the giving of the instruction in which the jury were directed to find him not guilty, and now assigns the rulings of the court in that regard as error. Appellant did not file a motion for a new trial, but presents the case upon the evidence produced and exceptions taken at the trial, all of which are preserved in a bill of exceptions which was duly settled and allowed by the trial court. Respondent's counsel insist that, in order to determine whether the court erred in directing a verdict, we must examine into and pass upon the evidence, and that we cannot do so unless a motion for a new trial is filed and overruled in the court below. This contention is based upon the decision in *Touse v. Consolidated Ry. & Power Co.*, 29 Utah 95, 80 Pac. 506. In that case it was held by a divided court that rulings made in admitting or excluding evidence, in charging the jury, and in refusing to charge as requested, including a request to direct a verdict, although duly excepted to and properly preserved in a bill of exceptions and assigned as error, were not before this court, unless a motion for a new trial was made and overruled by the court. If the decision in the *Touse Case* is to be adhered to, it would lead to an affirmance of the judgment in this case upon the sole ground that there is nothing before us for review.

In view that the decision in the *Touse Case* involves no property rights, but does affect an important question of

34 Utah.—26

practice on appeal, we have felt constrained to re-examine
the propositions decided in that case.   From such an exam-
ination, we have become convinced that the majority of the
court misconceived the purpose the Legislature had in view
in making the amendment to section 3304 as contained in
Laws 1901, p. 25, c. 27.   This amendment now constitutes
section 3304, Comp. Laws 1907, and as in force when the
*Touse Case* was decided and as now in force reads as fol-
lows:

"Sec. 3304.   Upon an appeal from a judgment, all orders, *rul-
ings* and decisions in the action or proceeding to which exceptions
have been taken in the court below, or which are deemed excepted
to, *as provided in this Code*, are before the Supreme Court for re-
view, *and in equity cases any question of fact shall be reviewable
by the Supreme Court without a motion for a new trial, and in all
cases at law tried before the court without a jury, all questions of
error in findings of fact and conclusions of law legally reviewable
by the Supreme Court shall be before the Supreme Court for re-
view without a motion for a new trial, and either party to the ap-
peal may assign errors on findings of fact or conclusions of law,
or that any findings of fact by the court are not supported by evi-
dence, on appeal to the Supreme Court, without filing a motion for
a new trial in the court below.*"

For convenience we have given the amendatory part of
the section in italics, while the original portion is
in plain type.   In construing section 3304 in the
prevailing opinion in the *Touse Case,* it is assumed that
the amendment to the section constituted a limitation upon
the matters declared to be before this court for review, as
defined in the original section before it was amended.   As
we have already pointed out, the Legislature added the
word "rulings" to the words "orders and decisions" in
making the amendment.   The Legislature thus evinced a
clear intention of enlarging rather than restricting the mat-
ters that should be reviewed in this court without a mo-
tion for a new trial.   When "all orders, rulings and de-
cisions in the action or proceeding to which exceptions have
been taken in the court below, or which are deemed excepted
to, as provided by this Code," were declared to be before
this court for review without a motion for a new trial, it

certainly included every question that was submitted to the
trial court requiring an order, a ruling, or a decision during
the trial.    Is there any act that a trial court can be called
upon to make in any action or proceeding during a trial that
does not directly come within one or more of those terms?
We confess that we cannot conceive of a single act that
can be required of a trial court during the trial that is not
covered by the terms, orders, rulings, or decisions. The
Legislature added the word "rulings" to make assurance
doubly sure that every possible question upon which the
trial court directly passes during the trial and on which
he may err may be presented to this court for review with-
out a motion for a new trial, provided the order, ruling,
or decision is duly excepted to, or when a statutory excep-
tion is implied.    It is true that, in referring to errors oc-
curing in findings of fact in law cases, the language of the
statute confines the errors that may be reviewed to cases
tried to the court without a jury.

From this, and from this alone, it is argued in the *Touse
Case* that all errors occurring at the trial that can be re-
viewed without a motion, for a new trial must be limited
to cases tried without a jury.    If we but apply the ordi-
nary rules of construction to the language used in the sec-
tion, this view seems clearly erroneous.    The two added
clauses to the section, the first of which refers to the review
of questions of fact in equity cases, and the second relating
to the review of errors in findings of fact in law cases tried
before the court without a jury, are entirely independent
of each other, and independent of the phrase, "all orders, rul-
ings, and decisions," referred to in the first clause of the
section.    To construe the language of the section so as to
limit the right to review "orders, rulings and decisions"
found in the first part of the section by what is said in
the independent clause which refers to errors in findings
of fact and conclusions of law to cases tried to the court
without a jury, is to offend against the most fundamental
canon of construction, namely, that every word or phrase
must be given its ordinary meaning, unless the context shows

that to do this would defeat the intention of the author. In what way is the manifest intention of the Legislature affected by giving orders, rulings, and decisions their full force and effect, and also giving the clause with regard to the review of errors in findings of fact and conclusions of law in cases tried before the court without a jury its full force and effect? Both may stand and receive full force and effect, and still neither the sense of the language used nor the manifest intention of the Legislature affected in the slightest degree. Not only is this so, but, if the power of this court is restricted in reviewing errors in orders, rulings, and decisions in cases only that are tried without a jury, unless a motion for a new trial is made, then something must be assumed to be in the section which is not found there, or the language must be given a meaning which the author did not intend it to have. No one can successfully contend that the orders, rulings, and decisions referred to in the statute that are before this court for review without a motion for a new trial do not cover every action that a court may be called on to take from the inception of the case to its conclusion.

In this connection it may be asked—and the question is pertinent—if this be so, why was it necessary to add the two independent clauses to the section by which this court is required to review questions of fact in equity cases and errors in findings of fact and conclusions of law in law cases tried to the court without a motion for a new trial having been made in the court below? The answer to this question is no doubt to be found by a reference to the facts which induced the amendment of the section. We have already shown that the amendment to the original section was made in 1901. In June of the preceding year this court held in the case of *Swenson v. Snell*, 22 Utah 191, 61 Pac. 555, that the evidence in equity cases would not be reviewed by this court to determine whether the evidence supported the findings, unless a motion for a new trial had been made and passed on by the court below. The court therefore held that the "orders and decisions" mentioned in the original sec-

tion did not include findings of fact. In order to overcome this ruling, the Legislature in the amendment specifically mentioned findings of fact, and made them subject to review without a motion for a new trial. It is true that in the *Swenson Case,* supra, nothing was said about errors in findings of fact and conclusions of law in law cases tried to the court, but it was only reasonable to assume that, if the term "deisions" did not include questions or findings of fact in equity cases as was held by the court, it would not include them in law cases. Therefore, to remove all doubt and misconception, the Legislature specifically mentioned these things, notwithstanding the fact that they may have really been included in the term "decisions." In the *Touse Case,* however, this court not only adhered to the ruling in the *Swenson Case,* but went further, and in effect held that notwithstanding the fact that by reason of the ruling in the latter case the Legislature was required to specifically mention findings of fact and conclusions of law as reviewable without a motion for a new trial in law cases tried by the court without a jury, and by specifically mentioning these things, the Legislature thereby intended to limit the review of orders, rulings, and decisions to cases only that were tried to the court without a jury, and, in case the ruling sought to be reviewed required this court to look into the evidence, this could not be done in jury cases, unless a motion for a new trial had been made and passed on by the trial court. Such a holding seems to us manifestly erroneous. In order to review the action of the trial court in either directing or in refusing to direct verdicts, we no doubt must look into the evidence. The order, ruling, or decision of the trial court, whichever it may be held to be, must necessarily be based on the evidence produced at the trial. If the evidence, therefore, is without conflict, and is such that no conflicting inferences are permissible, or if such be the case, if, when all of the evidence together with the inferences to be deduced therefrom, when most favorably considered in favor of the plaintiff, still lacks some essential element in making out his case, the question as to what the verdict shall be is one purely

of law for the court to pass on. The same would be true if the defendant under like circumstances failed in proving some essential element necessary to make out a defense. In the one instance the court would direct a verdict against the plaintiff; in the other against the defendant. In either case the question would be one of law, which would have to be applied to the uncontroverted facts.

The fact that an occasion does not often arise where the evidence is of such a character as to permit the court to pass upon it as a matter of law does not affect the duty of either the trial court or of this court to do so when it does arise. If a request to direct a verdict is made, the trial court is required to grant or refuse it. In making the ruling the trial court must necessarily pass upon the question whether the evidence justifies its submission to the jury for a finding either for or against the plaintiff or defendant. In doing this the court simply decides what the judgment shall be in view of the conceded or undisputed facts. In such a case the court does not weigh the evidence to determine what fact or facts the evidence establishes, but simply rules that from the undisputed or conceded facts but one conclusion is legally permissible, and thus directs the jury what that conclusion must be, and enters judgment accordingly. If the court errs in directing or in refusing to direct a verdict under such circumstances, the error is one of law which is reviewable by this court as coming within orders, rulings, or decisions made in an action, and it is immaterial whether we call it the one or the other. The material thing is that the duty is cast upon this court to review the action of the trial court. Nor is the fact that we must look into the evidence the same as the trial court was bound to do a matter of consequence. This court, no more than the trial court, examines into the evidence for the purpose of weighing it, or for the purpose of determining whether under the evidence certain facts are established or not; but we have recourse to it only for the purpose of determining what the result shall be when the law is applied to the undisputed or conceded facts upon which the trial court passed in either directing or refusing to direct a

verdict. In order to make it possible and convenient for this court to review the action of the trial court, the only thing that is necessary is that the evidence produced and the proceedings had at the trial in the court below be preserved in a bill of exceptions duly settled and allowed by the trial court, and that the same be made a part of the record on appeal to this court.

The decision in the *Touse Case* entirely misconceived the object and purpose of a motion for a new trial under the practice in force in this state. The right to move for a new trial is present in every case whether legal or equitable, or whether tried to a court or jury. If a party thinks he can convince the trial court that it committed prejudicial error and will grant him a new trial without an appeal, he may make his motion and obtain a ruling upon it; but, where he has obtained one ruling from that court and has taken or is given a statutory exception, he need not require the court to repeat the error before he is entitled to a review of the error by this court. Moreover, if he has not taken, or if the statute does not give him an exception to any ruling or decision before the filing of a motion for a new trial, he cannot obtain a review of such a ruling by simply filing a motion and getting an adverse ruling upon it, and then except to such ruling. The motion for a new trial does not enlarge the matters that may be reviewed by this court, except upon matters which the trial court could not, and did not, pass on at the trial. These are specified in section 3292, and, in brief, are: (1) Irregularity in the proceeding of the court or jury; (2) misconduct of the jury or the adverse party; (3) accident and surprise; (4) newly discovered evidence; (5) excessive damages allowed by the jury; and (6) the insufficiency of the evidence to justify the verdict. In granting or refusing the motion the trial court may exercise a sound discretion which the losing party may invoke in the light of the whole proceedings in the case. This court cannot exercise such discretion, but is ordinarily limited to the review of specific rulings made by the trial court. It is manifest that all the matters enumerated in most all of the foregoing grounds for which

the motion for a new trial may be granted can be submitted to the trial court but once for a ruling. If one ruling is sufficient as to those grounds, why is not one ruling 'and exception equally sufficient with regard to all other errors of law? This is the evident purpose of the law relating to the review of the rulings and decisions of the trial court by this court. If the trial court has passed upon a matter in the course of a trial and an exception is taken or is given by the statute, the ruling or decision made by the trial court, if assigned as error, is before this court for review on appeal. If, therefore, a matter comes up after the trial, or where some irregularity in the proceedings during the trial, or some of the matters arise which are enumerated in the first five grounds for a new trial to which we have directed attention, they must be brought to the attention of the trial court by a motion for a new trial, and his ruling upon them may then be reviewed by this court. They cannot be reviewed otherwise, since the trial court cannot pass upon them except in passing on a motion for a new trial. So, likewise, in case a party desires to challenge the verdict of a jury upon the ground that the verdict is not sustained by the evidence, he must do so by a motion for a new trial, unless during the trial he raised the legal question involved by a motion for a nonsuit or for a directed verdict. Unless he has presented either a motion for a nonsuit or for a directed verdict, the trial court has had no opportunity to pass upon the legal sufficiency of the evidence during the trial, and cannot do so unless a motion for a new trial upon the ground of the insufficiency of the evidence is presented to it. When, however, a motion for a nonsuit or a motion for a directed verdict has been made and ruled upon, the court has had the opportunity to pass upon the legal sufficiency of the evidence precisely the same as upon a motion for a new trial, and hence the latter motion, for the purposes of a review, may be dispensed with. In this way all the orders, rulings, and decisions of the trial court, whether made during the trial or on motion for a new trial, can be brought before this court for review, and on all of them the court need to pass judgment

but once. Any other holding would bring about the incongruity of requiring the trial court to pass twice on some matters, while it may do so but once on others. Where, as in some jurisdictions, the motion for a new trial constitutes the foundation for a review, and where nothing can be considered by the appellate court except such matters as are incorporated into a motion for a new trial, the trial court is given the opportunity to pass upon the same question twice.

The argument that a motion for a new trial was intended by the Legislature to give the trial court an opportunity to review the ruling made during the haste of a trial is far more plausible than sound. If the Legislature had intended such to be the procedure, it would have been easy to have said so, and thus make the statute read so as to make the court's ruling upon the motion for a new trial the basis of a review. The Legislature, however, did not do this, but in unmistakable terms has said that all the orders, rulings, and decisions which are duly excepted to in the trial court, are before this court for review without a motion for a new trial. By section 3298 it is provided that the court may grant a new trial on its own motion in case the jury have plainly disregarded the instructions, or where a verdict is rendered under misapprehension of the instructions, or is based upon either passion or prejudice. Moreover, in case of an error, the losing party may always move for a new trial, and if the error is prejudicial, the trial court, no doubt, will grant a new trial without compelling the applicant to come to this court for relief. In view, therefore, that, under the statutes of this state, the review of errors of the trial courts is direct, and does not depend upon a motion for a new trial except for matters upon which the trial court had no opportunity to pass during the trial, we have no right to impose duties upon the appellants which the law does not require of them. It is our duty to review all questions that are brought here in accordance with the statute giving the right of review. Where a statute is as clear as is section 3304, we have no right to disregard it, and, if this court has made a palpable error in construing it, it is our duty to correct the error, when, as is

the case here, the correction will not inflict serious injury on any one and will enforce the legislative intent. We refrain from referring further to the general law upon this subject. We are thoroughly satisfied with, and adopt and reiterate, the same as it is stated by Mr. Justice Straup in his dissenting opinion in the *Touse Case*.

From what has been said it necessarily follows that all the orders, rulings, and decisions made by the trial court during the trial, including his ruling in directing or in refusing to direct a verdict, and all questions of fact in equity cases on which the trial court has passed, including the findings, and also all errors in findings of fact and conclusions of law made by the court in law cases, are before this court for review without a motion for a new trial. The *Touse Case*, therefore, so far as it is in conflict with these conclusions, ought to be, and accordingly is, overruled.

Proceeding now to the merits of the assignments of error, we remark that the accusation filed in the case is divided into six paragraphs, each one of which contains a specification or statement of some particular offense, which, it is claimed, constituted malfeasance in office. The introductory part of the accusation states that the respondent is accused "of malfeasance in office committed as follows," and this statement is followed by the six separate and distinct charges referred to. At the trial the first, third, and fourth charges were abandoned, and they need no further consideration or attention. In the second paragraph it is, in substance, alleged that on the 1st day of March, 1907, the respondent, as sheriff of Cache county, Utah, "did unlawfully, knowingly, fraudulently, and corruptly present for allowance and payment a certain false and fraudulent claim against the said Cache county to the board of commissioners thereof . . . containing, among other charges against the said county, a charge .. . . for the following items as sheriff's expenses, which said items were not a just or legal charge against the said county." These allegations are followed by a statement of the items, which, in the aggregate, amounted to the sum of $13.95, consisting of charges for railroad fare,

hack fare, and hotel expenses for taking three convicts from Logan, Cache county, Utah, to the state prison at Salt Lake City. It is further alleged that respondent had, on the 7th day of February, 1907, presented a claim to the state of Utah for said items of expense, and that the same had been allowed and paid to him on the 2d day of March, 1907, by said state; that "said claim was presented . . . with the intent then and there to prejudice, damage, and defraud said Cache county;" and that, when respondent presented the claim for allowance to Cache county, he well knew that it had been paid by the state, and that it was a false and fraudulent claim as against Cache county. In support of this charge, appellant produced and introduced in evidence the original claim containing the items for which it had been duly presented by respondent to and allowed by the Auditor of the state of Utah, and also produced the original claim as duly presented by him to and its allowance by the county commissioners of Cache county, and further proved that the claim had been paid by the state of Utah, and also by Cache county, to the respondent. The respondent in no way disputed the fact of the presentation, allowance, and payment of the claim in question, although he testified as a witness in his own behalf upon other charges. The appellant insists that upon this proof the court should have directed the jury to find against the respondent upon this charge of the accusation. He further urges that under the proof respondent had violated the provisions of section 4083, Comp. Laws 1907, which provides:

"Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, city, town or district board officer, authorized to allow or pay the same, if genuine, any false or fraudulent claim, bill, account, voucher, or writing is guilty of felony."

Appellant further contends that, if respondent was not guilty under this section, he was guilty under section 4580, which, in substance, provides that when "any officer . . . has been guilty of knowingly, willfully and corruptly charg-

ing and collecting illegal fees for services rendered or to be rendered in his office,'' and that this constitutes a cause for removal from office. It seems to us that the proof as above outlined does not bring respondent's case within the provisions of section 4580. The items of expense set out in the charge cannot be construed as a charge for illegal fees for services rendered. The respondent made no claim for any services, but the claim was one for money paid out and expended by him in the discharge of an official duty, for which the law provided neither fees nor compensation other than the salary provided for him by section 2057, Comp. Laws 1907, and he did not attempt to make a charge for services by presenting the claim either against the state or Cache county. Another answer to this contention is that the accusation does not charge the respondent with having made a charge for illegal fees, but the charge against him is that he presented for allowance a false and fraudulent claim for certain enumerated items consisting of sheriff's expenses. The question, therefore, is: Did the charge, as made in the accusation, of the presentation of the claim against Cache county after it had been paid by the state, come within section 4083, supra; and, further, if it be held that it did not, did respondent's acts in this regard constitute malfeasance in office for which, under section 4565, he may be removed from office?

In *State v. Swan*, 31 Utah 336, 88 Pac. 12, we had occasion to construe section 4083, and we there said:

"The offense consists of presenting for allowance and payment a false claim; that is, one not genuine in fact. It is of no consequence whatever in what respect it was false, nor is the manner of its presentation material. The only question is: Is it in fact false, and was it presented with intent to defraud? That is the gist of the offense."

The term "genuine," as used in the statute, refers to a real claim as contradistinguished from a mere counterfeit. It does not mean that the claim referred to must be a counterfeit or an imitation of some valid claim to bring it within

the statute. Neither does it mean, as respondent's counsel
contend, and as the trial court seemingly held, that the claim
referred to in section 4083 must be one which upon its face
must appear legal and payable by the officer to whom it is
presented for allowance and payment in the sense that the
law authorizes its allowance or payment by such officer. The
statute is violated if the claim is one which upon its face
purports to be a charge against the particular political di-
vision for which the officer or board mentioned in the statute
acts in allowing or paying it, and the mere fact that the claim
is unauthorized by law and the board or officer cannot legally
allow or pay it is not decisive. So long as the claim, if valid,
is one that could or should be allowed or paid by the city,
county, state, or district against which it is preferred, it is
within the statute, although the claim itself may be for a mat-
ter which the law does not authorize or even forbids. In our
opinion the second paragraph of the accusation, while not as
precise as it might be, nevertheless states sufficient facts to
authorize a conviction under section 4083. The question,
however, still remains whether the proof was likewise suffi-
cient to warrant such a conviction under that section. The
court ruled as a matter of law that it was not. This ruling,
it seems, was based upon the theory that, in order to authorize
the removal of an officer for the acts denounced in section
4083, the proof must not only show beyond a reasonable
doubt that a fraudulent or illegal claim was presented for al-
lowance or payment, but further, that it must be made to ap-
pear either directly or by unavoidable inference beyond a
reasonable doubt that the accused presented the claim with
the intent to defraud. That the state of the proof should be
such in order to convict the officer of a felony cannot well be
doubted; but it does not follow that the proof must show a
specific intent to defraud in order to sustain a conviction for
malfeasance in office. In *State v. Lazarus*, 39 La. Ann. 161,
1 South., 361, the ordinary definitions given to the term mal-
feasance by lexicographers are set forth as follows: Evil
doing; ill conduct; the doing of what one ought not to do;
the unjust performance of some act which the party had no

right, or which he had contracted not to do; the commission of some act which is positively unlawful. In the majority opinion in the case above referred to it is said:

"The contention of the defense that the malfeasance or nonfeasance or gross misconduct charged must as a condition precedent to removal (removal from office) be proved to be criminal or corrupt is manifestly erroneous. It is absolutely untenable either in reason or on authority."

It is further observed that all the authorities which hold that a criminal intent must underlie the commission of an impeachable offense are based on the provisions contained in section 4, art. 2, of Const. U. S., and have no application to statutory or constitutional removals, such as we are now dealing with. In *Minkler v. State,* 14 Neb. 181, 15 N. W. 330, the Supreme Court of that state, announced the same doctrine. This court in *Skeen v. Craig,* 31 Utah 20, 86 Pac. 487, and in *Skeen v. Chambers,* 31 Utah 36, 86 Pac. 492, in effect held that in a proceeding to remove an officer under section 4580 it was not necessary to show a criminal intent. The principle involved here is not changed, although the acts complained of may also be denounced as a felony by some section of the statute.

The trial court also seemed to be of the impression that unless the proof was sufficient to justify a conviction for a felony, or if the acts of malfeasance proved were not specified in some section of the statute, then the respondent could not be convicted, and hence not removed from office. The trial court evidently overlooked section 4056, which, so far as material here, provides:

"The omission to specify or affirm in this Code any ground of forfeiture of a public office . . . or any power conferred by law to impeach, remove, depose, or suspend any public officer . . . does not affect such forfeiture or power, or any proceeding authorized by law to carry into effect such impeachment, removal, deposition, or suspension."

By the provisions of section 4066 a mere conviction of a felony which involves misconduct in office in and of itself

forfeits the right of the convicted person to continue in or to hold office. If, therefore, an officer were found guilty of the felony denounced in section 4083, this would cause his removal without any further action or proceeding. But it is not necessary in order to remove an officer from an office that he be convicted of a crime. If he is found guilty of an act which constitutes malfeasance in office, he may be removed. If, therefore, the fact should be made to appear beyond a reasonable doubt that the respondent had preferred a claim against Cache county, and had received payment thereof with full knowledge that he had no legal right to the money, he would be guilty of an act of malfeasance in office, and could be removed therefrom. In view of the provisions of section 4056, it is not necessary that the specific acts for which a removal is demanded are specified in some particular section of the Code. It is enough if the particular acts relied on by the county attorney are specified in the accusation filed against the officer, and that in law such acts amount to malfeasance in office. While certain acts if committed by an officer may, under certain sections of the statute, constitute either felonies or misdemeanors, and may thus likewise constitute malfeasance in office, it is not necessary that an act in order to constitute malfeasance must likewise be a crime. Both under the Constitution and under the statute it is provided that officers of the class to which respondent belongs may be removed upon three grounds, namely, for high crimes, for misdemeanors, and for malfeasance in office. It therefore was not intended that, before an officer is subject to removal from office, he must be found guilty of some high crime or misdemeanor; but, if he is found guilty of some act or acts which constitute malfeasance in office, it is sufficient to remove him. In order to authorize a removal from office, however, the act of which the officer is accused must be positively unlawful, or must involve some evil or wrongdoing on his part which must be known to him to be so when the act is committed.

To illustrate: In this case the evidence tends to prove without conflict that the respondent preferred a claim against

the state for certain items of expense advanced by him on its behalf; that the State Auditor had allowed the claim, and that it had been paid to respondent; that after such payment respondent claimed and obtained payment for the same items from Cache county; that at some time prior to the time the claim in question was presented to and allowed by the State Auditor the respondent had asked the State Auditor whether such claims would be paid by the state, and, when respondent was informed that the state paid them, he further inquired whether the money belonged to him, whereupon the State Auditor advised him that the money belonged to respondent as a perquisite of his office. Upon this information respondent filed his claim with the State Auditor, and the same was allowed and paid to him. Up to this point respondent claimed and received no more than was due him under the law. The amount he had advanced for the state had, however, been repaid to him. The only ground, therefore, upon which he could base his claim against Cache county, was that he was entitled to the amount of the expenses advanced by him as a perquisite of his office upon the theory that he was allowed the amount of the expenses, and, in order to obtain the money therefor, he would have to file a claim against Cache county, since the state had done no more than to reimburse him for what he had expended. The State Auditor evidently knew that respondent was not entitled to the money as compensation, but assumed that in some way it belonged to him as a perquisite of his office, and so advised him. It would seem that neither the Auditor nor the respondent gave the matter any thought or consideration; for, if they had, they could not have arrived at any such conclusion. There is no law in force in this state which authorizes such a claim. No doubt the presumption is that respondent knew the law and therefore ought to have known that he was preferring a claim against Cache county the payment of which the law did not authorize. It does not follow, however, that, because an officer prefers a claim against the state or a county or a municipality the payment of which the law does not authorize, he is necessarily guilty

of either a crime or malfeasance in office. If this were so, every officer would be guilty who preferred a claim the payment of which upon investigation was found not to be authorized by law. Before an officer may be removed from office for malfeasance for preferring a claim which is unauthorized by law, the jury must find beyond a reasonable doubt that the officer knew when he preferred the claim or received payment that he was not entitled to the money—that he had no legal right to receive it. This knowledge may be shown by direct evidence, or it may be inferred from the facts and circumstances in the case. While it is true, as we have shown from the authorities cited, supra, that, in order to constitute malfeasance in office, it is not necessary that the officer had a specific intent to defraud, it nevertheless is necessary that the act charged against him must involve conscious wrongdoing on his part. The mere act of filing an unauthorized claim and receiving payment thereof may or may not constitute a wrongful act as contradistinguished from one that is not sanctioned by law. It is for the jury to say, under proper instructions from the court, whether the act of the officer involved conscious wrongdoing in view of all the facts and circumstances disclosed by the evidence. As a general rule, it cannot be said as matter of law that a particular act is wrongful and constitutes malfeasance in office simply because it is not authorized by law, and the jury ought to be so instructed. If we apply the law to the facts in this case, the court was not authorized as matter of law to rule that the respondent was guilty or not guilty. It was for the jury to say, after considering all of the evidence produced in support of the so-called second count or paragraph of the accusation, whether the respondent preferred the claim with full knowledge that he had no legal right to its payment. If he did, he ought to be convicted of malfeasance, and, if he did not, he should be found not guilty. Moreover, it is, to say the least, doubtful whether, under sections 4574 and 4575, to which we have already referred, the court may in any proceeding instituted to remove one from office direct a verdict

34 Utah.—27

of guilty except upon a plea of guilty, or upon what amounts to such a plea as illustrated in the case of *Skeen v. Paine,* 32 Utah 295, 90 Pac. 440. In that case a directed verdict of guilty was sustained by this court upon the ground that the defendant in the written answer to the accusation filed by him admitted the facts under which the claim was presented and the money paid to and received by him, and offered no legal explanation nor excuse for his acts. Under those circumstances the answer of defendant was tantamount to a plea of guilty, and the matters which he offered as a defense not amounting to such in law, left nothing for the court to do except to pronounce him guilty as a matter of law.

This is further illustrated in the cases of *Skeen v. Craig and Skeen v. Chambers,* supra. In those two cases the same questions were involved as in the *Paine Case,* but in the two former cases there was no admission such as would amount to a plea of guilty, and this court reversed the *Craig Case* upon the ground that the trial court had misdirected the jury with regard to what would constitute a defense to the acts charged against the defendants in that case. In those cases it was in effect held that, while a specific intent to defraud is not necessary to sustain a conviction, it nevertheless was not held that the mere act of preferring and obtaining payment of a claim not authorized by law was sufficient to convict. The circumstances in the *Skeen Cases* were peculiar in this: The three defendants were councilmen of Ogden City. The amount of their compensation for all official services was fixed by law, and they were by the same law forbidden to receive more. They preferred claims for official services against Ogden City, and allowed them and ordered them paid to themselves. The claims were therefore allowed and paid in the very teeth of the law. Under such circumstances, it is not easy to perceive how public officials could excuse their deliberate acts of obtaining public funds which the law forbids them to take. But, notwithstanding this, this court sent the *Craig Case* back for a new trial, and permitted the jury to pass upon the facts under proper instructions. In the *Paine Case* the conviction was sustained because it was

based upon what in effect amounted to a plea of guilty, and was therefore disposed of in accordance with the provisions of section 4574, supra. We remark, further, that, while it was held in all of the *Skeen Cases* that removal cases were civil in their consequences, yet it does not follow from this that the court may in the first instance direct verdicts in this class of cases the same as in all other civil cases. In this regard some effect must be given to sections 4574 and 4575 in which the conditions upon which the court may render a judgment of conviction, and, in the absence of those conditions, the manner of trial is stated. In section 4575 it is provided that "the trial must be by jury." If it be assumed that the accused officer may waive a jury, still, until he does so, he is entitled to have a jury pass upon the facts, and apply them to the law as given by the court. While no doubt a verdict may be set aside and a new trial granted for errors of law in instructions and in the proceeding, both for and against the accused, it does not follow that the court may pronounce judgment on the facts except on a plea of guilty, but must let the jury pass on them; and, in case the jury refuses to follow the instructions, the court may set aside the verdict, and grant a new trial. We are of the opinion, therefore, that the court did not err in refusing to direct a verdict of guilty upon the charge contained in the second count or paragraph of the accusation, but it seems clear to us that the court erred in directing a verdict of not guilty upon this charge. The court should have submitted the facts to the jury, and should have instructed them as to the law in accordance with the views herein expressed.

The fifth and sixth paragraphs of the accusation, in effect, charged the respondent with filing false statements of the fees collected by him for official services rendered, and with failing to charge and collect certain legal fees for services as required by law. Section 1015, Comp. Laws 1907, in substance provides that all state, district, county, city, town, and school officers must keep a correct account of all fees collected by them, and must account for and pay the same into the proper treasury. This section is practically a copy

of section 2, art. 21, Const.  Section 1016 requires fees
generally to be paid in advance.  Section 1023 requires all
officers to keep a fee book in which a full and detailed state-
ment of all fees, compensation, and commissions collected
and received by them must be entered.  Section 1027 pro-
vides:

> "If any officer shall refuse or willfully neglect to keep a fee
> book, or to file a sworn statement, or to make returns as herein
> required, he shall be deemed guilty of a misdemeanor."

The evidence on behalf of appellant was to the effect that
respondent had not made a charge for all the official ser-
vices rendered by him in serving processes and papers in ac-
tions pending, and had not made a correct statement of all
fees earned and for which a charge should have been made.
With regard to this, it is sufficient to say that the respondent
and his deputies attempted a full explanation why certain
fees were omitted from the statement filed by him, and also
why certain charges for fees were not made. ` The irregu-
larities in this regard were neither numerous nor large in
amount.  While the statute to which we have referred re-
quires a full and correct account of all fees to be entered in
the fee book, and further requires that a statement of the
fees collected be filed, it does not follow that an officer is liable
to removal from office for an error in charging or failing to
charge and collect, or in failing to report certain items of
fees.  In this regard the officer must no doubt comply with
the law, and, as provided in section 1015, supra, his bond is
held responsible for all fees he should have charged and col-
lected.  But, as appears from section 1027, he is guilty of a
misdemeanor only when he "shall refuse or willfully neglect
to keep a fee book, or to file a sworn statement," and not for
a mere mistake or inadvertence in failing to charge or to col-
lect fees.  While his bond may be responsible for all omis-
sions to charge and collect legal fees, he is not also liable to
removal from office or punishment as for a misdemeanor un-
less the failure to charge fees and enter them in the fee book
or to file a statement thereof amounts to a willful failure to

do so as contradistinguished from a mere mistake or over-sight. As to whether the failure to charge legal fees or to include them in a statement filed by him is willful or other-wise is purely a question of fact, which, under proper instruc-tions defining what the statute required in this regard, should ordinarily be submitted to the jury to pass on. While the evidence in this case is clear that the respondent served pro-cesses in three instances upon which he made returns show-ing the amount of fees charged for services rendered, and in one instance served papers on which no charge appears, and, further, that in making his statement of fees he failed to state the foregoing items, there nevertheless is no direct evi-dence of a refusal or willful neglect on his part, unless the fact that he did not include these fees in the statement of fees earned is evidence which justifies a finding that he re-fused or willfully neglected to file a correct statement as provided by section 1027. In view that section 1016 pro-vides that all fees shall be paid in advance, it may be pre-sumed that the officer whose duty it is to collect fees in ad-vance has complied with the law, and, when the return on the process shows a charge for fees, it may likewise be pre-sumed that the officer has collected and has them, unless it is made to appear that the case was a charity case, in which no fees were to be collected as provided in said section. These presumptions, however, go no further than we have stated, and, standing alone, would be insufficient to authorize a finding that the officer refused or willfully neglected to include them in his statement, since such refusal or neglect involves wrongdoing, and this is never presumed, but must be made to appear either directly or be inferable from some established fact or facts. Where the omissions to charge fees or to include them as appears from the returns on the pro-cesses served are numerous when compared with the total number of returns made by the officer, and such failures constitute a large proportion of his transactions, the omis-sions may be sufficient to justify an inference and finding that the officer refused or willfully neglected to file a correct statement of the fees, but these inferences may be explained

by the officer, and he may show that the omissions arose from mistake or inadvertence, and not through willfulness or inexcusable neglect. It thus becomes a question of fact for the jury in view of all the evidence, and it is for them to say whether, under all the evidence, the officer refused or wilfully neglected to make a true and correct statement or not. It is not the mere failure to make a correct statement, but the refusal or willful neglect to do so, that constitutes the offense.

The principle involved here is not like that which controlled in the *Skeen Cases,* supra. There the act of demanding and receiving the fees was prohibited by law, and the defense was not that they were demanded or received through a mistake of fact or through inadvertence. The defense in effect was that the accused were mistaken as to the law. When officers discharging administrative, executive, or judicial functions file claims for alleged services rendered, and allow them and order them paid to themselves when the law prohibits their allowance and payment, and when such officers have already received full compensation for their services, as was the case in the *Skeen Cases,* how can they offer any legal excuse for their acts? The claims were deliberately filed, allowed, and ordered paid; and the money was deliberately received in the very teeth of the law. The very elements, namely, mistake or inadvertence, that may be present in this case in the charges now under consideration, were legally impossible in those cases. It is obvious that an officer, while acting in good faith, may, through mistake, omit to enter or charge for fees earned, or he may forget to enter them in a fee book, or he may fail to make a charge when he ought to make one, through inadvertence. In all such cases, while his bond may be responsible, he is not subject to removal from office, nor is he guilty of a misdemeanor, unless the facts show such a flagrant disregard of duty as amounts to wantonness or willfulness, and whether they do or not is a question of fact for the jury under proper instructions from the court. The court, therefore, likewise erred in not submitting the evidence produced in support of

the charges contained in paragraphs 5 and 6 to the jury under proper instructions.

The judgment is reversed, with directions to the district court to grant a new trial and proceed with the case in accordance with the views herein expressed. Appellant to recover costs.

McCARTY, C. J., and STRAUP, J., concur.