## STATE ex rel. WELLING v. THIRD JUDICIAL DISTRICT COURT IN AND FOR SALT LAKE COUNTY et al.

No. 5711.   Decided October 8, 1935.   (49 P. [2d] 950.)

Rehearing denied December 10, 1935.

*Burton W. Musser*, of Salt Lake City, for plaintiff.

*Joseph Chez*, Atty. Gen., and *Calvin W. Rawlings*, Dist. Atty., and *Parnell Black*, Asst. Dist. Atty., both of Salt Lake City, for defendants.

WOLFE, Justice.

On the application of the relator, a temporary writ of prohibition was issued to the trial court enjoining the said court from proceeding further in the case of *State* v. *Welling* until we had opportunity to consider the question of whether the information accusing the defendant █ of a violation of section 7929, Comp. Laws Utah 1917, now carried as section 103-26-7, R. S. Utah 1933, stated an offense, and whether, if not, such failure was jurisdictional. That section reads as follows:

"Every person who, with intent to defraud, presents for allowance or for payment to any state board or officer, or to any county, city, town or district board or officer, authorized to allow or pay the same, if genuine, any false or fraudulent claim, bill, account, voucher or writing is guilty of a felony."

Section 11 of the 1929 General Appropriations Act (chapter 100, Laws of Utah 1929) provides that:

"The board of examiners is hereby prohibited from allowing any claim payable out of appropriations made herein * * * until the

original claims and vouchers, properly itemized and sworn to by the claimants and approved * * * shall be presented," etc.

The funds out of which payment for the services of a clerk in the office of the Secretary of State would be payable were part of the appropriation made by that bill.

It is unnecessary to quote the information at length. It charged the defendant with presenting a false claim, in that he had presented a claim for $100 for a month's services purporting to have been performed by one Golda Richards as clerk in his office of Secretary of State, when in fact, it is alleged, he knew she had not done so and was not entitled to any sum for services. The information shows that Welling and not Golda Richards verified the claim and presented it for allowance. It is in this regard that relator claims the information does not show that a "claim" as meant by section 7929, was presented.

The position of the relator can be stated as follows: The word "claim," as contained in section 7929, means not only a right to obtain payment for services rendered or materials furnished to or moneys expended on behalf of any of the respective political units named in said section, but means that the demand for such payment as the same is presented to the board or officer authorized to pay the same must be in such form as will permit the board or officer to pay the same; that the word "authorized" should be read not merely as pointing out the board or officer of a political unit which has the duty of auditing or paying a person who has rendered services, furnished materials to, or expended money on behalf of such political unit, but should be read as denoting the conditions under which such board or officer is permitted to pay such claim when the same is presented. Stated another way, that the words "authorized to allow and pay the same" are invested with the meaning that the paper presented evidencing the demand must meet all the conditions required by law for such officer or board to allow the same; that is to say, it must be signed and verified by the person who has rendered the services, furnished

the materials, or expended the money; that a demand made in a form which will not permit the board or officer to pay it is not a "claim" within the meaning of said section, because the board or officer would not be "authorized to allow or pay the same, if genuine," for the reason that it is not verified or presented by the claimant, but in this case by the relator who was not the claimant.

Relator seeks to invest the word "claim," in section 7929, with the meaning that it is the formal paper evidencing the demand which must be verified by the demandant and not meaning only the right to receive payment or reimbursement in cases where services have been performed, materials furnished, or moneys expended on behalf of a political unit. The contention is unsound. The very section 11 of the act cited by the relator says: "The board of examiners is hereby prohibited from allowing any *claim* payable," etc., thus itself recognizing that a claim meant that which was earned regardless of its manner or form of presentation. The prohibition directed to the auditing board or officer against allowing a claim when the form of presenting the evidence of its dueness is not in proper form does not affect the existence of the claim. The claim is born when one performs services or furnishes materials to or expends money on behalf of another for which he is entitled to be paid. A claim comes into being regardless of how it must be presented and regardless of the safeguards which the law demands shall accompany its presentation for audit and regardless of a prohibition against its allowance when not properly evidenced or presented. Such is the meaning of the word "claim," in section 7929, which a board or officer is authorized to allow if genuine. The crime is complete when a false claim is presented, knowing that it is false; it is complete when the paper purporting to represent or evidencing the claim which never was earned is passed through the window to the auditing body with knowledge by the presentor that it was never earned and never could be due. Restrictions on the auditing body or

officer on the other side of the window against allowance because not in proper form are restrictions on the action of that body or officer and have no bearing on what elements are necessary for the person on the first side of the window to commit the crime, which is complete when a false demand is presented knowing that it is false.

This court was evidently of that opinion in the case of *Law* v. *Smith*, 34 Utah 394, 98 P. 300. At page 412 of 34 Utah 394, 98 P. 300, 307, it is said:

"The term 'genuine,' as used in the statute, refers to a real claim as contradistinguished from a mere counterfeit. It does not mean that the claim referred to must be a counterfeit or an imitation of some valid claim to bring it within the statute. Neither does it mean, as respondent's counsel contend, and as the trial court seemingly held, that the claim referred to in section 4083 must be one which upon its face must appear legal and payable by the officer to whom it is presented for allowance and payment in the sense that the law authorizes its allowance or payment by such officer. The statute is violated if the claim is one which upon its face purports to be a charge against the particular political division for which the officer or board mentioned in the statute acts in allowing or paying it."

This court held that a "claim is one which upon its face puroports to be" such a charge as the county would be liable for. The language of the Ohio case of *State* v. *Voute & Kinney*, 68 Ohio St. 274, 67 N. E. 484, 485, that "the powers and duties of these officers [auditing officers] do not enter into the statutory definition of the crime," is in point. The words "if genuine" in our statute must be read as denoting the type of claim for which a political unit is liable. If a person presented a paper whether verified or otherwise in support of a purported claim which, even if genuine, was of such a nature that it could not be legally allowed or paid by a particular political unit to which presented, there could be no crime in presenting it. For instance, if a person presented to a city a claim for bounty for killing cats when there was no law or ordinance providing for the payment of such bounty, there could be no crime charged for presenting

such claim even though the person presenting the same had never earned the pretended bounty by killing any cats. Such is the purport of *People* v. *Lanterman,* 9 Cal. App. 674, 100 P. 720, where the claim was presented for an expense which the county in no event had authority to pay.

If the case at bar were such as *People* v. *Howard,* 135 Cal. 266, 67 P. 148, where the ordinance under which a false claim was made was itself invalid, thereby giving the board no authority to pay the claim if genuine, or like *Law* v. *Smith,* supra, where the claim was for a recompense which the board had no authority to pay whether or not it had been paid by the state, we cannot say—in fact, it is not necessary to say at this time—that the relator's contention might not be correct. But where the claim is one which, if genuine, the board has authority to pay, the legal requisites of its presentation for allowance are restrictions upon the action of the auditing or paying board or officer and do not enter into the test of that "authority to pay" as meant by section 7929. The case of *Cluff* v. *Territory,* 5 Ariz. 255, 52 P. 350, seems contrary in that regard. A false claim was there presented by a school superintendent, but the warrant made out by him was in favor of another but unindorsed by such other and presented by the superintendent. The court held that the indorsement of the payee was a necessary prerequisite to payment by the treasurer (as verification of the claim against the state in this case is a prerequisite to allowance), and that therefore the warrant did not, in the form presented, reflect the claim which the treasurer would have been "authorized to pay, if genuine." We have no doubt that the information filed in the case at bar charges a crime under section 7929, Comp. Laws 1917, now known as section 103-26-7, R. S. 1933.

Since both sides evidently proceeded on the theory that if an information did not state an offense the trial court would not have jurisdiction to proceed, it is unnecessary for us to consider at this time whether such failure would

be merely error or whether it would be jurisdictional. It is further unnecessary because we conclude that the information does state an offense.

In this case counsel for relator asks us, in case we find that the information does state an offense, to review the action of the lower court in conducting certain phases of the trial in the absence of the defendant, citing numerous cases wherein it is asserted that the courts have held that instructing a jury in the absence of the defendant in a felony case is prejudicial error. Affidavits as to what occurred in the absence of the jury are filed. We have, in this respect, been quite sympathetic of the position of the relator, because it appears to us that there is much practical merit in his request. If we should, upon studying the record before us, find that the court below had committed palpable error which would necessarily result in a reversal on appeal, it would appear to be unfortunate if we could not at this time indicate and decide such matters as are now before us. To fail to do so will result in complications. It is not beyond a reasonable supposition that two or three actions may be filed to try out different questions, such as the right of the relator to continue in office after sentence; and if there is a reversal, a contest as to his right to assume office, and a contest to determine who in the interim is entitled to the salary where only one appropriation for the salary has been made. In the public interest is would be efficacious for us to decide all the issues which are presented to us at this time. But we are unable to find any warrant in the law for so doing. We have given considerable time to this phase of the case. We have found a number of cases, including our own jurisdiction, where the court having the complete record before it treated the writ of prohibition as a writ of review or certiorari and decided the questions raised by such record. See *Smurda* v. *Superior Court, etc.* (Cal. App.) 266 P. 843; *A. G. Col. Co.* v. *Superior Court in and for Santa Clara County,* 196 Cal. 604, 238 P. 926; *Traffic Truck Sales Co. of California* v.

*Justice's Court of Red Bluff Tp.,* 192 Cal. 377, 220 P. 306; *Clark* v. *Bramel, District Judge,* 57 Utah 146, 192 P. 1111. But we have found no cases where, upon an application for a writ of prohibition, it was determined that the lower court had jurisdiction of the subject-matter and of the parties and yet the superior court to whom the application for the writ was addressed went on to determine whether or not certain rulings of the lower court were error. Where an application for a writ of prohibition is treated as an application for a writ of certiorari or writ of review, the court is limited to a determination as to whether or not there has been a failure or excess of jurisdiction, just as in a case of an application for a writ of prohibition. The court cannot determine whether or not there has been error. There may be an exception in a case where a board, department, or officer is acting in a purely administrative and ministerial way or even in a quasi judicial manner and commits error. Some of the courts impliedly hold that what would have been error had a lower court made the same ruling constitutes excess of jurisdiction so as to give a right of review of the actions of such body, department, or officer where otherwise there would be no right of appeal or method of determining whether the parties who appeared before such body, department, or officer had been denied their rights; but such exception need not detain us in this case, because we are here dealing with the rulings of a court and not a ministerial or executive officer.

We have been unable to find any case where the court to whom the application for a writ of prohibition was addressed held that the lower court had jurisdiction and then, after denying that there was any cause for the issuance of the writ, went on to determine whether the court had acted erroneously while acting within its jurisdiction.

The relator urges that if we find that the information does state an offense, that we treat the application for the writ of prohibition in this case as an application for a writ

of mandate, but the difficulty with this suggestion is that we ordinarily cannot mandamus a lower court to make a particular decision. In this case the lower court has before it a motion to set aside the verdict and grant a new trial. This gives the lower court an opportunity to pass upon the question as to whether error was committed during the trial. There the lower court has before it a question and has not yet ruled thereon, mandamus may not issue to require the court to rule one way or the other, but only to exercise its judgment and make some ruling thereon where it is apparent that the court refuses to rule. In the case at bar there is nothing to show that the lower court refused to rule on the motion for a new trial. Furthermore, when it rules it may rule in favor of the relator. At all events, this is not a case where we can coerce the court to rule one way or another. The law gives it the opportunity to use its judgment. In cases where the court refuses to rule on a question before it—which is not this case—and it is apparent that when it does rule it can only make one certain ruling, then mandamus will issue to not only require it to rule, but to require it to rule that way.

To recapitulate, we can only turn an application for a writ of prohibition into a writ of mandamus where the threatened action of the lower court is such that merely arresting it would not suffice, but where, in order to gain for the writ of prohibition a complete remedy in respect to the threatened action of the lower court, it requires that the lower court take some other definite affirmative action which admits of no alternative. See *Hale* v. *Barker*, 70 Utah 284, 259 P. 928.

Here we have a case in which the lower court has not only not refused to act, but where it has never been given an opportunity to pass upon the very questions which counsel asks us in this case to take cognizance of, and where such questions involve merely error and are in no way related to the questions of lack or excess of jurisdiction which the application for the writ of prohibition presented. If,

in this case, we had found that the lower court threatened to act outside its judicial powers and the mere arresting of its judicial action would not give full remedy, in that the court by merely obeying the writ of prohibition and not proceeding would still leave the applicant for the writ without a complete remedy, and it was further apparent that the action the lower court should take was only of one kind without any alternative, then this court could consider the application for a writ of prohibition as an application for a writ of mandate, which is its counterpart, and affirmatively direct the court to act in the only way it could or should act if it acted correctly. But where we are asked to review and decide other questions entirely unrelated to the alleged threatened use of powers not judicially bestowed and unrelated to any judicial action which would be a necessary counterpart to effect a complete remedy for the lower court's threatened unauthorized action and which unrelated questions do not draw into the case any question of jurisdiction but only error, and where in addition the court has before it, yet unruled upon, a motion in regard to which it will presumably decide such questions correctly, this court cannot presume that its rulings would be incorrect and prematurely forestall any opportunity of the lower court to so rule.

We realize that the law is not static and should develop and grow in accordance with the needs and exigencies arising out of human relationships and situations, and that the court should not be too reluctant to reach out when necessity dictates. Thus grows the body of the law. But in this case the departure asked by counsel is rather too severe and calls for so drastic an extension of the office of a writ of prohibition that it would practically change its nature. Certainly, if ever there was a case in which a superior court should reach out and take cognizance of a question as to whether the record reveals prejudicial error, after it had determined on application for a writ of prohibition that the lower court had acted within its jurisdiction in the matter

presented by the writ, this is such a case. If it should transpire on appeal that the lower court had committed prejudicial error and had refused to grant a new trial, the injury to the relator in his right to hold office and to his reputation would be such that no appeal could totally undo. Yet, in spite of this, we cannot see our way clear to lay down a rule of law which might be salutary in this particular case, but which would extend the office of the writ of prohibition so far as to practically turn it into a mechanism whereby intermediate rather than final judgments of the court could be reviewed by appeal.

The temporary writ of prohibition is dissolved, and the application to have it made permanent is denied. Costs to defendants.

ELIAS HANSEN, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.