## SKEEN v. CRAIG.

No. 1753. Decided August 2, 1906. (86 Pac. 487).

1. ACTION—CIVIL OR CRIMINAL—PROCEEDING TO OUST FROM OFFICE.— Constitution, article 6, section 18, declares that all impeachments shall be tried by the Senate, and section 19 provides that certain officers shall be liable to impeachment, while section 21 provides that all officers not liable to impeachment shall be removed for any of the offenses specified in the article in such manner as may be provided by law. Revised Statutes 1898, section 4580, provides that when an accusation in writing verified by the oath of any person, shall be presented to a district court, alleging that any officer within the jurisdiction of the court shall have been guilty of charging and collecting illegal fees, etc., the court must cite the party charged to appear, and on appearance summon a jury to hear the evidence, and, if the charge is sustained, enter a judgment ousting the accused from his office. *Held,* that a proceeding under this statute is of a civil and not a criminal nature, and not within the provision of Constitution, article 8, section 18, that the style of all process shall be the "State of Utah," and all prosecutions be conducted in the name and by authority of the same.

2. OFFICERS—PROCEEDINGS TO REMOVE—EVIDENCE—ADMISSIBILITY AND SUFFICIENCY.—In such a prosecution, however, the rules governing the introduction of evidence in criminal cases must be followed, and the guilt of the defendant must be established with the same degree of positive proof as is required in criminal prosecutions generally.

3. SAME—KNOWINGLY CHARGING ILLEGAL FEES—GOOD FAITH — EVIDENCE.—Constitution, article 21, section 1, provides that all state, district, city, county, etc., officers shall be paid fixed and definite salaries, and Revised Statutes 1898, section 225, declares that officers of any city shall receive such compensation as may be fixed by ordinance. Section 1029 declares that any public officer who shall charge and receive for any service rendered by him any greater amount than is prescribed by law shall be deemed guilty of a misdemeanor, and section 4580 provides for the removal from office, upon the suit of any private person, of any officer who has been knowingly guilty of charging illegal fees. *Held,* that in a proceeding under section 4580, neither the fact that defendant actually performed the services for which he made an illegal charge nor the fact that the performance of his official duties compelled him to neglect his private business could be considered by the jury upon the question whether defendant acted in good faith.

4. SAME—OFFICERS LIABLE TO REMOVAL—APPLICATION OF STATUTE.—Under Revised Statutes 1898, section 4580, authorizing proceedings to remove from office officials guilty of charging and collecting illegal fees for services rendered, an officer who is not paid by fee, but who receives a fixed salary may be proceeded against.

5. STATUTES—RULES OF CONSTRUCTION.—General terms and expressions of a statute are to be given general construction, unless some other provision of the statute or the context itself shows that the Legislature intended them to be used and applied in a limited or restricted sense.

APPEAL from District Court, Weber County; J. A. Howell, Judge.

Action by J. D. Skeen against William Craig. From a judgment for defendant, plaintiff appeals.

REVERSED AND REMANDED.

*J. N. Kimball, Geo. Halverson* and *J. D. Skeen* for appellant.

*Maginnis & Corn* for respondent.

The court erred in sustaining the demurrer of the defendant to the fifth paragraph of the amended complaint. There is no distinction between a city councilman refusing and neglecting to investigate and oppose the allowance of improper claims against a city and a sheriff refusing and neglecting to serve a summons. The intent of the legislature was evidently to provide a summary means of removing an unfaithful public servant at the instance of any individual. In *Woods v. Varnum,* 85 Cal. 639, 24 Pac. 843, it was held under a very similar statute and probably the original of our statute, that a tax collector who had erroneously collected taxes not due and who refused and neglected to repay them upon discovery of the error was subject to removal for neglecting and refusing to perform his official duties. (*Miller v. Smith* [Ida.], 61 Pac. 824.) Ignorance of the law does not excuse the defendant. The question of good faith cannot be urged. He was not laboring under a misapprehension of the facts in the case. In *People v. Monk,* 8 Utah 35, the defendant was indicted under section 2796, Comp. Laws 1888, for a misdemeanor in demanding and receiving illegal fees for recording a mining location. The defendant believed that he had a right to charge three dollars for his services as fixed by the custom of miners in the district while the territorial law fixed the fee at seventy-five cents. (2 Bish., Crim. Law, sec. 399; *Reynolds v. U. S.,* 98 U. S. 167; *Davis v. Com.,* 13 Bush 318; *U. S. v. Carr,* 3 Sawy. 479; *State v. Goodenow,* 65 Me. 30; *Com. v. Mash,* 7 Metc. [Mass.] 472; *Lincoln v. Shaw,* 17 Mass. 410; *People v. Calhoun,* 3 Wend. 420; *Leggett v. Prideaux,* 16 Mont. 205, 40 Pac. 377, 50 Am. St. Rep. 498. *Cobbey v. Burks,* 11 Neb. 117, 38 Am. Rep. 364; *State v. Welch,* 73 Mo. 284, 39 Am. Rep. 515; *Rankin v. Jarman* [Ida.], 36 Pac. 502, 39 Pac. 1111; *Miller v. Smith,* 61 Pac. 826; *Plyler v. Allison* [Tenn.], 82 S. W. 475; *Wilson v. Barratt,* 24 Pa. Super. Ct., 68, cited in 5 Current Law, 1407; *Levar v. State* [Ga.], 29 S. E. 467; *People v. O'Brien,* 96 Cal. 171.) Repeated violations of the plain provisions of

the law to the pecuniary benefit of the officer is proof of bad faith. (*Rankin v. Jarman*, 39 Pac. 1111; *Miller v. Smith*, 61 Pac. 826.)

RESPONDENT'S POINTS.

This court has no jurisdiction to hear this appeal, and therefore should dismiss the same, for the reason that this is a criminal action and should be brought in the name of the "State of Utah," and not in the name of a private individual. Section 18, article 8 of the Constitution of Utah, provides that all prosecutions shall be conducted in the name and authority of the State of Utah. (*Thurston v. Clark*, 107 Cal. 285, 40 Pac. 435; *Kilburn v. Law*, 111 Cal. 237, 43 Pac. 615; *Wheeler v. Donnell*, 110 Cal. 655, 43 Pac. 1; *In re Curtis*, 108 Cal. 661, 41 Pac. 793; *U. S. v. Boyd*, 116 U. S. 616; *Lee v. U. S.*, 150 U. S. 476.)

The word fees as used in section 4580 of the Revised Statutes of Utah, does not include extra salary voted by the council in open session to themselves. (*Musser v. Good*, 11 Serg. & R. 247; *Tillman v. Wood*, 58 Ala. 578; *Landis v. Lincoln County*, 50 Pac. 530.)

It would indeed be a very harsh and unjust rule of evidence which would not permit a common councilman to explain his vote concerning any question upon which he has acted when he is called into a court of justice and accused of a crime. As a rule intent is always a necessary ingredient in connection with the act to constitute a crime. There are cases where the law infers the intent from the act, but this is not one of those cases. (*State v. Blue*, 17 Utah 179; *Queen v. Tolson*, 23 Q. B. Div. 168; *Bradley v. People* [Colo. Sup.], 9 Pac. 783; *People v. Wadsworth*, 63 Mich. 500; *Com. v. Este*, 140 Mass. 279; *Phelps v. People*, 55 Ill. 334; *People v. Hurst* [Mich.], 28 N. W. 836; *People v. Carillo*, 54 Cal. 63; *Triplett v. Munter*, 50 Cal. 644; *People v. White*, 34 Cal. 183; *State v. Bierce*, 27 Conn. 319; *Ponting v. Isaman*, 65 Pac. 434; *Haynes v. Hall*, 37 Vt. 20; *State v. Van Kuran*, 25 Utah 8.)

McCARTY, J.

This action was instituted in the district court of Weber county, Utah, by J. D. Skeen, as a taxpayer and a citizen of Ogden City, against William Craig, a member of the city council of Ogden City, to remove the defendant from office, under section 4580, Revised Statutes Utah 1898. The amended complaint alleges that at the time defendant became a member of the city council there was in force an ordinance of Ogden City, entitled "An ordinance fixing the salaries of mayor and other officers of Ogden City," approved October 28, 1899; that said ordinance fixed the compensation of the councilmen of said city at $240 per year, payable in equal monthly installments on the last day of each and every month. The complaint also contains a detailed statement of the facts and circumstances under which it is claimed defendant on different occasions charged and collected illegal fees for services rendered by him as a city councilman. A trial by a jury was had, which resulted in a verdict in favor of the defendant. To reverse the judgment entered on the verdict, plaintiff has brought the case, on appeal, to this court.

Respondent challenges the jurisdiction of this court to hear the appeal on the ground that it is a criminal action and should be brought in the name of the State of Utah, and not in the name of a private individual. In support of their contention that the appeal should be dismissed for the want of jurisdiction, counsel for respondent cite and rely on section 18, art. 8 of the Constitution of Utah, which provides that "the style of all process shall be 'The State of Utah,' and all prosecutions shall be conducted in the name and by the authority of the same." The question as to whether proceedings of this kind to remove from office a public official are civil or criminal has been before the courts of other states, and, while the decisions are not harmonious, yet the great weight of authority, and as we think the better reasoned cases hold that such actions are civil. (*Rankin v. Jauman,* 4 Idaho 53, 36 Pac. 502; *Id.,* 4 Idaho 394, 39 Pac. 1111; *Ponting v. Isaman,* 7 Idaho 283, 62 Pac. 680; *Id.,* 7 Idaho 581, 65 Pac.

435; *Fuller v. Ellis, Atty. Gen.*, 98 Mich. 96, 57 N. W. 33; *Clay v. Stuart*, 74 Mich. 411, 41 N. W. 1091, 16 Am. St. Rep. 644; *Atty. Gen. v. Jochim*, 99 Mich. 358, 58 N. W. 611, 23 L. R. A. 699, 41 Am. St. Rep. 606; *Moore v. Strickling*, 46 W. Va. 515, 33 S. E. 274, 50 L. R. A. 279.) We do not think, however, it is necessary to look beyond the provisions of the Constitution and statutes of our own state to determine the class of actions (civil or criminal) to which the one under consideration belongs.

Section 18, art. 6, Const. Utah, provides:

"All impeachments shall be tried by the Senate. . . ."

Section 19:

"The governor and other state and judicial officers, except justices of the peace, shall be liable to impeachment for high crimes, misdemeanors, or malfeasance in office; but judgment in such cases shall extend only to removal from office and disqualification to hold any office of honor, trust or profit in the state. The party whether convicted or acquitted, shall, nevertheless, be liable to prosecution, trial and punishment according to law.

Section 21:

"All officers not liable to impeachment shall be removed for any of the offenses specified in this article, in such manner as may be provided by law."

Now, section 21 confers upon the Legislature power to provide by law the procedure by which the officials not liable to impeachment may be removed from office, and, in pursuance of the power thus granted, the Legislature, among other things, provided (section 4580, Rev. St. 1898) that

"When an accusation in writing, verified by the oath of any person, shall be presented to a district court, alleging that any officer within the jurisdiction of the court shall have been guilty of charging and collecting illegal fees for services rendered, or to be rendered in his office, . . . the court must cite the party charged to appear before the court at a time not more than five days from the time the accusation was presented; and on that day, or some subsequent day not more than twenty days from that on which the accusation was presented, must proceed to impanel a jury and hear the accusation and evidence offered in support of the same, and the answer and evidence offered by the party

accused; and if, on such hearing, it shall appear by the verdict of the jury, that the charge is sustained, the court must enter a judgment that the party accused be deprived of his office, and for such costs as are allowed in civil cases."

It will be observed that neither fine nor imprisonment can be imposed. The only judgment that can be entered against the accused is, that he be deprived of his office, and for costs. It therefore necessarily follows that proceedings under section 4580, Rev. St. 1898, can only be brought against a person who, at the time such proceedings are instituted, is holding the office from which it is sought to have him removed. (*Smith v. Ling,* 68 Cal. 324, 9 Pac. 171; *Woods v. Varnum,* 85 Cal. 639, 24 Pac. 843.)

We think it reasonably appears from the provisions of the Constitution and Revised Statutes referred to, that their object is not to punish delinquent and unfaithful public officers as for crimes, but to protect the public against the rapacity and unscrupulousness of such officials, who, by their official misconduct, have forfeited their right to continue in the positions of public trust to which they have been elected or appointed. And it would seem that, if the object of such proceedings brought under section 4580 were to punish for the commission of crime, some judgment, other than that of removal from office only, would have been provided for and provision made in the same act for the prosecution of offending officers whose misconduct might escape detection until after the expiration of their terms of office. Furthermore, to hold that proceedings of this kind are criminal would bring that part of section 19 of the Constitution which provides that "the party, whether convicted or acquitted, shall, nevertheless, be liable to prosecution, trial and punishment according to law," in conflict with section 12, art. 1 of the same instrument, which, so far as material here, provides that "in no instance shall any person be twice put in jeopardy for the same offense." It is a familiar rule of constitutional construction that one provision of a Constitution will not be allowed to render inoperative another provision of the same instrument, if, by any reasonable construction, such a result can be avoided.

"If different portions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of a construction which will render every word operative rather than one which may make some words idle and nugatory." (Cooley's Const. Lim. [7th Ed.], 92.)

And, as we have observed, the only judgment that can be entered against a defendant when adjudged guilty in an action of this kind is, that he be deprived of his office, which affects only a civil right, namely, his right to continue in a position of public trust which has been conferred upon him, not for his benefit, but for the benefit of the public. (*State ex rel. Atty. Gen. v. Hawkins,* 44 Ohio St. 109, 5 N. E. 228; *Moore v. Strickling,* supra.) In the case of *State v. Lewis,* 26 Utah 120, 72 Pac. 388, in an opinion written by the present Chief Justice, it is said:

"When the provisions seem to conflict, a construction which will harmonize them will be adopted. . . . One provision of a Constitution will not be permitted to defeat another one if by any reasonable interpretation both can be given effect."

Now, it is apparent that, if the construction contended for by defendant should be adopted and adhered to in this state, the two provisions of the state Constitution last referred to could not stand together and both be given effect. Whereas, to hold in accordance with what appears to us to be the plain meaning and intent of section 4580, when considered and construed in connection with the provisions of the Constitution hereinbefore referred to, all the provisions of that instrument bearing upon the question under consideration are given full force and effect. True, section 4575 of the same act as is section 4580, provides that the trial shall be conducted in the same manner as the trial of an indictment or information for a felony. The Legislature doubtless intended by this provision to throw around the accused the same safeguards with which the law clothes a defendant in a criminal action. The same rules governing the introduction of evidence must be followed, and the guilt of the defendant must be established by the same degree of positive proof as is required in criminal prosecutions generally. It does not necessarily follow from this that a proceeding commenced in pur-

suance of the act in question is to be classed as a criminal action. The character of an action must be determined by the thing or object intended to accomplish and the kind of judgment that may be entered. Counsel for respondent have recited several California cases in which proceedings of this kind are held to be criminal. While the sections of the California statute relating to this class of actions are, in the main, similar to the corresponding sections of our own Code, yet there is a distinction. Under the California statute, when the defendant is found guilty, the court must, in addition to entering a decree depriving him of his office, enter judgment in favor of the informer for $500. This penalty of $500, which is imposed on the defendant, the Supreme Court of that state has held to be nothing more nor less than a fine. (*Wheeler v. Donnell,* 110 Cal. 655, 43 Pac. 1; *Kilburn v. Law,* 111 Cal. 237, 43 Pac. 615.) In this state, as we have observed, no fine can be imposed in an action brought under section 4580. The Supreme Court of Idaho, in construing a statute of that state which provides for a fine of $500, and which, in other respects, is practically the same as the California statute, has held, in a number of well-considered cases hereinbefore cited, that this class of proceedings is civil and in no sense criminal. The reasoning of the Idaho and Michigan cases hereinbefore cited and referred to, and the conclusions therein reached, are more in accord with our views of the law on this question than are the principles announced in the decisions which hold to the contrary doctrine.

It appears from the record that in the year 1903 defendant, as city councilman of Ogden City, charged and received $25 for "extra" services rendered by him as committeeman of the board of canvassers while canvassing election returns and services rendered on boards of equalization and review of special taxes. In December, 1904, the committee on laws, to whom the claims of several councilmen had been referred, made a report to the city council recommending that each member of the city council, including defendant, "be allowed the sum of $100 in full for services on the various boards of equalization and review during the year 1904." The report was

adopted, and each member of the city council, including defendant, was paid the sum of $100 from the public funds of the city. In December, 1905, the city council again voted a like amount to each of its members, including defendant. The minute entry of the proceedings containing the resolution, which is in evidence, is in part as follows: "Moved that each councilman be paid for 33 1-3 days' work on board of equalization and review. On motion of Mr. Graig, the resolution was adopted. Approved December 28, 1905." Defendant admitted at the trial that he charged and received from the city as extra compensation the several sums of money referred to. Section 1, art. 21, Const. Utah, provides, as far as material to this case, that

"All state, district, city, county, town and school officers, excepting notaries public, boards of arbitration, court commissioners, justices of the peace and constables, shall be paid fixed and definite salaries."

Section 225, Rev. St. 1898, provides that

"All officers of any city shall receive such compensation as may be fixed by ordinance, but the compensation of any such officers shall not be increased or diminished to take effect during the time for which any such officer was elected or appointed."

Section 1029, so far as material here, provides that

"Any public officer who shall charge and receive for any services rendered by him any other or greater amount than is prescribed by law for such service shall be deemed guilty of a misdemeanor."

It is admitted that during the time in which defendant was a member of the city council of Ogden City there was a valid and subsisting ordinance of said city which fixed the compensation of a city councilman at $240 each per year, payable in monthly installments; that during all the time defendant was acting as such city councilman he was paid and he received his regular salary as fixed by said ordinance.

The court, in its instruction No. 5, charged the jury that when defendant accepted the office of city councilman of Ogden City and entered upon the duties thereof, "it was obligatory upon him to serve and do work upon all committees

of the council of said city, both standing and special commit-
tees, and to serve upon boards of equalization and review of
special taxes levied by the council, and to sit in the council as
a member thereof when canvassing the election returns of
the city elections of said city, and that such services would be
and were, if any such were rendered, a part of his duty as
such councilman, for which he was not entitled to charge,
have, or receive any compensation or salary in excess of or in
addition to the compensation or salary of councilman fixed
by·the ordinance in these instructions hereinbefore referred
to; *but the court charges you that you have a right to take into
consideration the fact that the defendant did serve upon spec-
ial committees of the council or boards of equalization and re-
view of special taxes levied by the council in determining the
question as to whether or not the defendant was acting in good
faith when he received compensation in addition to that to
which he was entitled."* Plaintiff excepted to, and now as-
signs as error, the giving of that portion of the foregoing in-
struction which we have italicized. There was some evidence
which tended to show that the defendant's duties as city coun-
cilman required and took so much of his time that he was
compelled to neglect his private business. The court instruct-
ed the jury that they might consider this fact as bearing upon
the question of the defendant's good faith in accepting com-
pensation for his services in addition to that fixed by ordi-
nance. This instruction was excepted to, and the giving of it
is now alleged as error. In the first part of the instruction
No. 5 the court correctly charged the jury respecting the duty
of defendant as city councilman to serve on all committees
and boards to which he was assigned, and to perform all ser-
vices required of him as city councilman for the salary fixed
by the city ordinance, and that he was not entitled to charge
or receive for such services any compensation in excess of his
regular salary. The balance of instruction No. 5, the part
we have italicized, is erroneous, and the giving of it was er-
ror.

We know of no rule or principle of law that permits a pub-
lic official, who is charged with official misconduct in know-

ingly charging and receiving illegal fees, to show good faith
on his part, or, rather, lack of intent to commit a wrong, by
proving that he performed the services and did the work
which the duties of the office imposed upon him; and it was
equally erroneous for the court to instruct the jury that they
might consider the fact, if they found it to be a fact, that de-
fendant was compelled to neglect his private business in or-
der to properly perform the official duties required of him as
city councilman, for the purpose of determining his good
faith in charging and receiving from the city the extra com-
pensation complained of. It seems that the court, in charg-
ing the jury, proceeded on the theory that, notwithstanding
defendant may have charged and accepted fees as city coun-
cilman to which he was not entitled, yet, if he did so in ignor-
ance of the statute prohibiting it, without any corrupt intent
on his part to defraud the city or commit a wrong, he could
not legally be adjudged guilty and removed from office, and
counsel for defendant claim that becuase of his good faith in
charging and receiving the extra compensation as shown by
his own testimony, which they claim is not disputed, no cor-
rupt intent existed in his mind, and therefore he could not be
adjudged guilty of the offense. The Legislature, having pro-
vided that "the trial . . . shall be conducted in all re-
spects in the same manner as the trial of an indictment or in-
formation for a felony," it necessarily follows, as we have
hereinbefore stated, that the same rules by which the guilt or
innocence of a defendant in a criminal action is determined
must govern in proceedings of this kind. Section 4068, Rev.
St. 1898, which is declaratory of the common law, provides
that "in every crime or public offense there must exist a joint
operation of act and intent." It is also a recognized rule of
the common law that the intent, which is such a necessary ele-
ment of crime generally, is the intent to commit an act or to
do something which the law denounces as a crime, regardless
of the motives the accused may have had for doing the wrong.
In other words, as stated by a noted author on Criminal Law,
"the intent required is not to break the law, but to do the

wrong." (1 Bishop, Crim. Law, 300.) And again, in section 343 of the same work, the writer, after excepting from the rule a certain class or kind of crimes, to which the offense under consideration does not belong, says:

"If a man intends to do what he is conscious the law, which every one is conclusively presumed to know, forbids, there need be no other evil intent. As already stated, it is of no avail to him that he means, at the same time, an ultimate good."

And the rule is equally well settled that intent will be presumed from the criminal act; that is, the act itself is evidence of the intent. (8 A. & E. Enc. L. [2d Ed.], 286; 12 Cyc. 152.) There is this exception, however, to this general rule: When one, honestly acting under a supposed state of facts, is led into doing that which the law declares to be a crime, but which would have been innocent had the facts been as he supposed them to be when he committed the act, a conviction cannot be had, because, under such a state of facts, the criminal intent is wanting. (Bishop, Stat. Crim., 132; *People v. Monk*, 8 Utah 35, 28 Pac. 1115.) Nor does the rule apply in cases where an act becomes criminal only because of the existence of a specific intent which the law makes the gist of the offense. (8 A. & E. Enc. L. [2d Ed.], 287; 12 Cyc. 156.)

The case under consideration does not come within either of these exceptions. No claim is made that defendant was acting under a misapprehension of the facts when he presented his claims to the city council for extra compensation and received the money therefor. The claim he makes is that at the time he accepted the money he did not know that he had no legal right to make these charges. In other words, the mistake, if there were a mistake, was one of law rather than one of fact. Now, there is no principle of law more closely adhered to and followed than the rule that every person is presumed to know the law; and when a party is accused of crime he cannot be heard to say and to successfully plead as a defense that he was ignorant of the law which he is charged with having violated.

"In no case can one enter a court of justice to which he has been summoned in either a civil or criminal proceeding with the sole and naked defense that when he did the thing complained of he did not know of the existence of the law which he violated." (1 Bishop, Crim. Law. 294.)

In the case of *People v. O'Brien,* 96 Cal. 171, 31 Pac. 45, it is said:

"It is an emphatic postulate of both civil and penal law that ignorance of a law is no excuse for a violation thereof."

And again, in the same opinion:

"The rule rests on the public necessity. The welfare of society and the safety of the state depend upon its enforcement. If a person accused of crime could shield himself behind the defense that he was ignorant of the law which he violated, immunity from punishment would, in most cases, result. No system of criminal justice could be sustained with such an element in it to obstruct the course of its administration. The plea would be universally made and would lead to interminable questions incapable of solution. Was the defendant in fact ignorant of the law? Was his ignorance of the law excusable? The denser the ignorance, the greater would be the exemption from liability."

Likewise in *State v. McBrayer,* 98 N. C. 623, 2 S. E. 755:

"It is a mistaken notion that positive, willful intent to violate the criminal law is an essential ingredient in every criminal offense, and that where there is an absence of such intent there is no offense. Where the statute plainly forbids an act to be done, and it is done by some person, the law implies conclusively the guilty intent, although the offender was honestly mistaken as to the meaning of the law he violated."

In the case of *Coates v. Wallace,* 17 Serg. & R. 75, the Supreme Court of Pennsylvania, speaking through Chief Justice Gibson, say:

"The penalty imposed by this act may be incurred by exacting fees which are supposed at the time to be legally demandable. By the very words of the prohibitory clause, the taking is the gist of the offense. Ignorance of the law will not excuse in any case; and this principle is applicable and with irresistible force to the case of an officer selected for his capacity and in whom ignorance is unpardonable. The very acceptance of the office carries with it an assertion of a sufficient share of intelligence to enable the party to follow a guide provided for him, with

31 Utah—3.

an unusual attention to clearness and precision. On any other principle, a conviction would seldom take place, even ·in cases of the most flagrant abuse, for pretexts would never be ·wanting. Sound policy, therefore, requires that the officer should be held to act at his peril, and we are of opinion that the absence of a corrupt motive, or the existence of an agreement by the party injured, furnishes no justification for doing what the law' forbids." (*Cobby v. Burks*, 11 Neb. 157, 8 N. W. 386, 38 Am. Rep. 364; *Miller v. Smith*, 7 Idaho 204, 61 Pac. 824; *State v. Welch*, 73 Mo. 284, 39 Am. Rep. 515; *Gardner v. People*, 62 N. Y. 299; *State v. Foster*, 22 R. I. 163, 46 Atl. 833, 50 L. R. A. 339; 12 Cyc. 155, and cases cited in note.)

Counsel for defendant insist that the facts as disclosed by the record do not bring the case within the provisions of section 4580; their contention being that this section refers to officers only who are paid by fees for specific services, or, being salaried officers, are yet required to charge and collect fees for specific services, and that, as a city councilman is paid a stipulated and fixed salary, and in no way charged with the collection of fees of any kind whatsoever, he cannot be proceeded against under said section. It is conceded that the construction of the section of the statute under which this action is brought depends more upon the sense in which the term "fees" is therein used than upon the technical definition of the word as contradistinguished from other terms denoting the compensation of public officers. The terms of this section of the statute, wherein it refers to public officers and the "charging and collecting illegal fees," are general, and are not confined to the fees charged and collected by any one class of public officers not liable to impeachment. Now, it is a well-recognized rule of statutory construction that general terms and expressions of a statute are to be given a general construction unless some other provision of the statute or the context itself shows that the Legislature intended them to be used and applied in a limited or restricted sense. (Sutherland, Stat. Const. [2d Ed.], 392; Black on Interp. Laws, 136.) We fail to find anything in the phraseology of the section itself, or when it is read and considered in connection with other provisions of the statute relating to the general subject-matter of the action, which restricts or limits the scope or operation thereof to only one class of officers. By its

very terms the statute includes any officer (not liable to impeachment) who has been guilty of charging and collecting illegal fees. And its provisions are equally broad respecting "illegal fees." To bring the charging and collecting of illegal fees within the statute, it is not necessary that such fees be obtained from any specific source or sources, nor that they be charged and collected by an officer who is authorized by law to collect fees for specific services. The charging and collecting of illegal fees from the state, county, or municipality, by a public officer for private gain, is as clearly within the statute as the charging and collecting of illegal fees from a private individual. It would seem that, if it were intended to limit proceedings of this kind to include only a certain or specified class of public officers who might become delinquent, the Legislature would have said so. The Legislature has not only failed to so state in so many words, but, as we have observed, there is nothing in any of the statutory provisions which relate to or have any bearing upon the subject-matter of this class of actions from which such an intent can be inferred.

This same question was before the Supreme Court of Idaho in the case of *Rankin v. Jauman,* 4 Idaho, 53, 36 Pac. 502. In that case, the defendant, who was a county commissioner, was proceeded against by a private individual under a statute almost identical with the one under consideration. Another provision of the Idaho statute provided, so far as material here, that

"County commissioners . . . shall receive the sum of six dollars for each day actually engaged in transacting county business and twenty cents per mile for each mile necessarily travelled."

The defendant was accused of having charged for seventy-nine days' service at $6 per day and 430 miles at forty cents per mile in excess of what was actually due him. The objection was made there, as here, that the information did not accuse the defendant of having charged and collected illegal fees. The Supreme Court, in the course of the opinion, say:

"It is urged that the information does not accuse the defendant of charging and collecting illegal fees for services rendered or to be rendered in his said office. If it does not, we are at a loss to know how such an accusation could be made. The information accuses the defendant with having charged and collected, as county commissioner, pay for ninety-six days' service as such commissioner during the first quarter of the year 1903, when in fact he had rendered not to exceed seventeen days' service; and it also accuses him of having charged and collected mileage for 430 miles of travel when he in fact had not traveled any number of miles whatever. It also alleges that he charged and collected forty cents per mile for said travel when in fact the law allowed only twenty cents. The allegations of the information are very pointed and specific. . . . and come clearly within the provisions of said section."

The only difference between that case and the case at bar is that in the Idaho case the defendant was charged with official misconduct as a county commissioner, whereas in the case before us the party accused is a city councilman. The same principles of law are involved in both cases.

The judgment is reversed, with directions to the trial court to grant a new trial. The costs of this appeal to be taxed against respondent.

BARTCH, C. J., and STRAUP, J., concur.

